KELLY, Plaintiff-Appellee, v. FORD MOTOR COMPANY, Defendant-Appellant.

Ohio Appeals, Eighth District, Cuyahoga County.

No. 23619. Decided January 9, 1957.

Sindell, Sindell & Bourne, Theodore T. Sindell & Richard M. Markus, of Counsel, for plaintiff-appellee.

Bulkley, Butler & Rini, for defendant-appellant.

## OPINION

By HURD, J:

Plaintiff commenced this suit in Common Pleas Court by filing a petition against three defendants, namely, Johnson, Drake & Piper, Inc., Smith & Oby Company, and the Ford Motor Company, to recover damages for injuries sustained when a step ladder fell upon plaintiff from the platform of a scaffolding approximately thirty feet above the place where he was working. In the midst of trial, Johnson, Drake & Piper, Inc. and Smith & Oby Company, were dismissed as defendants to the action pursuant to a covenant not to sue, executed in their favor by the plaintiff in consideration of the sum of $30,000 paid to him by them. Plaintiff expressly reserved his right of action against the defendant, the Ford Motor Company. The trial continued as to Ford, resulting in a jury verdict for the plaintiff in the sum of $20,000, upon which judgment was rendered. Motions for a directed verdict and for judgment non obstante veredicto, and also a motion for a new trial having been overruled, the case is appealed to this court on questions of law.

The evidence shows that late in 1950 Ford began the construction of a foundry building and a boiler house on its property at 17601 Brookpark Road, Cuyahoga County, Ohio. Because the accident, which is the subject of this suit, occurred at the boiler house, the evidence in the record is generally confined to the area of its construction and environs. The record shows that Ford entered into contracts with several different contractors for the construction of the boiler house and for its overall preparation for operation. The contractors were designated as general contractors in agreements with Ford, but none of the contractors had supervisory control over the other. Part of the work of these contractors was subcontracted to other firms. Thus, Johnson, Drake & Piper, Inc., one of the original defendants, whose contract related to the building of the foundation and the erection of the walls and roof on the structural steel frame, had its own cement finishers, but engaged Smith & Oby Company, another original defendant herein, as a subcontractor to do the steamfitting. The employer of plaintiff, The Thomas J. Waldron Company, was hired to install fire brick in the boilers. As work on the boiler house progressed, a scaffold or construction platform was erected by Johnson, Drake & Piper, Inc. Its workmen, particularly cement finishers, used the overhead platform in the performance of their work. At times, that platform was also used by employees of Smith & Oby Company. The plaintiff, as an employee of a subcontractor, The Thomas J. Waldron Company, worked with a crew that operated a power saw which was used to cut fire brick to desired sizes. The saw was located

at a place beneath the overhead construction platform because it was convenient to the boiler. The crew had been working there for several days prior to the accident.

On June 7, the day preceding the accident, Smith & Oby Company employees had done some work on the overhead platform for which they used a stepladder, also known as an "A" frame ladder, which was owned by their employer. At the same time, the platform was used by cement finishers employed by Johnson, Drake & Piper, Inc. At the end of the day the Smith & Oby Company employees left the stepladder lying on the platform close to the edge. The following morning the same cement finishers came back to the platform and resumed their work. The record shows that they observed the stepladder lying near the edge of the platform, but since it was not their employer's property, did nothing about it. The work being done by the cement finishers caused the platform to vibrate, and about fifteen minutes after work commenced on the morning of June 8th, the ladder fell over the side of the platform and struck the plaintiff, who was working on the floor below, causing him serious injuries.

A careful examination of the record demonstrates that Ford was not guilty of any active or affirmative negligence in respect to the injuries sustained by the plaintiff. Johnson, Drake & Piper, Inc. built the platform and scaffolding. The ladder was furnished by Smith & Oby Company. Smith & Oby Company left the ladder in a precarious position on the platform. It was Johnson, Drake & Piper, Inc. workmen who caused the platform to vibrate and the ladder to fall. There is no evidence in the record showing that Ford was aware of these events. There were no employees of Ford involved in the accident nor was there any equipment of Ford in use at the time and place of the accident.

In the amended petition filed by the plaintiff against the three original defendants, there were nine specifications of negligence charged against defendant, Smith & Oby Company, the substance of which was that the Smith & Oby Company was negligent in failing to rope off or block off the area or otherwise guard the floor immediately below the opening in the scaffolding so that workers would not be injured by falling equipment, or by leaving a loose and unattached stepladder in a precarious position on the platform forty feet above the floor where men were working, thereby creating a nuisance and a great source of danger to all persons; in failing to warn plaintiff and in failing to move the ladder from its position on the platform so that it could not be dislodged or knocked down to the floor below.

The original defendant, Johnson, Drake & Piper, Inc. was also charged with nine specifications of negligence substantially the same as the specifications charged against Smith & Oby Company, and also that it permitted its subcontractor, Smith & Oby Company, to engage in an unsafe practice with regard to the ladder; that it constructed the overhead platform without toe boards or railing so that the ladder could fall therefrom; that it failed to warn plaintiff of his danger and failed to provide plaintiff with a safe place to work.

Ford was charged with negligence in failing to make its premises

safe and in failing to exercise ordinary care because plaintiff avers that he was an invitee of Ford in the boiler house which was under control and supervision of Ford and that Ford failed to provide a safe place of employment; in failing to warn plaintiff of his danger, and that it allowed Smith & Oby Company to set the ladder on the platform without securing same.

On this appeal, defendant assigns as error:

1. That the trial court erred in refusing to grant defendant's motion for judgment at the conclusion of plaintiff's case;

2. In refusing to grant defendant's motion made at the conclusion of all of the evidence;

3. In refusing to grant judgment for defendant based on plaintiff's release of the other defendants to the original action for the sum of $30,000 on the theory that said defendants were primarily liable for plaintiff's injuries; and

4. The trial court erred to the prejudice of the defendant by overruling Ford's alternative motion for judgment non obstane veredicto or for a new trial.

The case was presented to the jury on the claim of the plaintiff that his "injuries were directly and proximately caused by the joint and concurring negligence of the three defendants originally in the case." Counsel for plaintiff state in their brief that "there is no contention in this case that Ford retained such extensive and complete control over its contractors as to cause them to be considered servants of Ford or to impose **respondeat superior liability** upon Ford for the negligence of its contractors," and argue that "the retention of power over the contractors creates an obligation to exercise that control with reasonable care." Thus, it is not contended that there was a relationship of employer-employee between the contractors and Ford or between plaintiff and Ford. To so contend or admit would defeat plaintiff's action, for the release of one primarily liable would discharge one secondarily liable, and the release of the defendantts, Johnson, Drake & Piper, Inc. and Smith & Oby Company, by a covenant not to sue would discharge Ford. Thus, plaintiff claims that Ford reserved a certain limited control over the premises and the operations of the contractors, both by contract and by the actual exercise or assumption of authority, and that it exercised this control negligently, and such negligence concurrent with the negligence of the other defendants to the action, now released, caused the injuries sustained by plaintiff.

The trial judge appears to have accepted plaintiff's theory because in overruling defendant's motion for a directed verdict, he declared, in part, as follows:

"Now in this case, as the Court views it, there is evidence here of certainly prima facie caliber to warrant the question of submitting to the jury the issue of whether control has been retained or not, to whatever extent the evidence indicates.

"No. 2, there is a basis laid here for a direct duty owed by each of these defendants to the plaintiff, if as the court has indicated, the Ford Motor Company is found to have retained any control.

\*　　　　\*　　　　\*　　　　\*　　　　\*

"At least prima facie, we have inspections being made, supervision being made; we have evidence of the fact that work might be accelerated, or work might be slowed down. We have evidence that at one time during the course of this job a deviation or change did take place from the mode of performance as originally contracted, before, and, I believe, subsequently changed. We also have evidence in this case that the Ford Motor, under the contract, I believe, exercised the right, at least had the right to order people off of the premises, employed by some of the sub-contractors, and so forth."

Counsel for plaintiff contend that Ford reserved such a degree of control over and supervision of the boiler house project by contract as to make Ford liable for the injuries sustained by plaintiff while working on the project. With this contention, we do not agree. Examining the specifications of the contract in evidence, we find from the pertinent and essential provisions thereof that the engineer, as the representative of Ford, the owner, had authority to determine how the work of one contractor "shall be coordinated with the work of other contractors engaged simultaneously on this project," to interpret drawings or inconsistencies occurring therein; to decide as to the quality or fitness of materials, equipment and workmanship; that the "contractor shall not assign or sublet the whole or any part of the work without the consent of the written approval of the owner and that no such approval so given," shall release or relieve the contractor from any of the obligations and liabilities under the contract; that the owner may at any time during the progress of the work order alterations in, additions to or deductions from the work; that the contractor shall keep a competent superintendent and any necessary assistants at the site throughout the progress of the work and that all directions given to the superintendent shall be as binding as if given to the contractor; that at such times as the resident engineer may direct the contractor and/or his subcontractors shall meet with the resident engineer and other contractors to discuss the status of the work and measures to further the progress thereof; that the contractor shall prepare and submit a definite progress schedule and furnish the same to the owner for approval; that if in the judgment of the owner, it becomes necessary at any time to accelerate the work, the contractor, when ordered so to do, shall cease work at any particular point and transfer his men to such point and execute such portion of his work as may be required to enable others to hasten and properly manage and carry on their work; that the contractor shall consult with the owner's resident engineer as to the methods of carrying on work so as not to interfere with the owner's operations as well as the available space for storage of materials and location of plant, places of access to work, etc., and all is to be arranged to suit the owner's requirements.

It is fundamental that the interpretation of a contract, the provisions of which are clear and unambiguous, is for the court and not for the jury. The cited provisions of the contracts are, it seems to us, recognized rights which the owner may reserve without thereby becoming subject to liability for the negligence of a general contractor, or sub-

contractors. This is particularly true where a number of prime or independent contractors and subcontractors are simultaneously engaged in work upon the same project. We find in these provisions nothing which per se creates liability by contract upon the owner for the torts of his independent contractor. Furthermore, we find nothing in these provisions which gives to the owner the authority to direct the details of the work or which thrusts upon him responsibility for an injury resulting from the negligent manner in which the details of the work are carried out by an independent contractor. It should be emphasized that Ford was not the general contractor as contended by the plaintiff but the employer of independent contractors. A contractor (general contractor) is one who furnishes labor and materials and directs and supervises the details and manner of doing the work. Ford did not do so in this case but employed independent or prime contractors for this purpose.

We have also examined the evidence in the record in relation to the practices of Ford in connection with the work of the independent contractors in pursuance of the terms of the contract. The record shows that the practice was to inspect the work and to supervise, schedule and coordinate the work between the several contractors and at times to direct which part of the work should be accelerated. This work of inspection, coordination, acceleration, and scheduling was performed through Ford's architect, the resident engineer and his assistants. There is nothing in the record which shows that Ford interfered with, supervised or assumed any responsibility for the details of the work. The practice, as indicated by the record, when it became necessary to give instructions, was to give such instructions through the field representative or field superintendent of the contractor on the job. This was all in connection with the inspection, coordination, supervision, acceleration and scheduling provided for in the contract with respect to the general contractor and his subcontractors. There is one exception to this method of dealing with contractors appearing in the record. It is where the field representative of Smith & Obey Company, called by plaintiff as his witness, testified as to one or two instances where his men were told to re-route lines that were running to the basement of the boiler house by either Ford's engineer or the architect's representative and in at least one of these instances, Ford countermanded the order. These two isolated .instances had no connection whatsoever with the accident. Neither was there any repetition of such instances. The same witness testified that he ran his own men and told them what to do and how to do it and that such was the general practice throughout the work.

Complaint is made by plaintiff that Ford's representative called upon the contractors to construct the boiler house in an order different from that which some of them would otherwise have followed; in a manner that would be most convenient for Ford's plans in putting a portion of the boiler into early operation and that Ford failed to furnish a safe place to work.

This claim came about largely because one craft worked above another in the area of the boiler house. It was testified by the same witness for plaintiff that in this type of construction such a situation is

unavoidable and will occur at some phase of the construction.

We conclude that the record is clear that the accident was caused by the affirmative acts of Smith & Obey Company and Johnson, Drake & Piper, Inc. It cannot be said that Ford's premises were inherently dangerous. Neither can it be said that any control retained by Ford, under the circumstances of this case, was the direct or proximate cause of the injuries sustained by plaintiff. Neither was Ford an insurer of the safety of the employees of contractors or subcontractors engaged in work on the premises.

Since the rendition of the judgment in the instant case, another case factually quite similar, so far as the relationship of the parties and the theory of the action are concerned, was decided by the United States Court of Appeals, Sixth District. See Ford Motor Company v. Tomlinson, 229 Fed. (2d) 873, decided February 11, 1956. Application for writ of certiorari denied October 8, 1956. In a well-reasoned and authenticated opinion (74 Abs 375), the Sixth District Court, through Stewart, J., discusses decisions of the Ohio Courts applicable to the situation there presented.

Plaintiff in that case, in a diversity of citizenship action, had been awarded damages in the sum of $13,500 against Ford Motor Company by the United States District Court for the Northern District of Ohio, Eastern Division, for personal injuries which he sustained while working as a painter in a plant under construction on the defendant Ford's property, the very property here involved, on Brookpark Road. In that case, as in this, Ford let a number of prime contracts for various phases of the work in the construction of a new engine plant. There, as in this case, Ford reserved in its prime contracts the power to coordinate, approve, accelerate and schedule progress. The plaintiff there, as here, was an employee of a subcontractor at the time of his injuries. Plaintiff was working on a scaffolding sixteen feet above the floor. He was injured when an employee of another subcontractor, while operating a dump truck, moved it forward in such a manner as to pull the scaffolding down, causing plaintiff to fall to the floor, resulting in the injuries that formed the basis of his complaint.

There, as in this case, plaintiff sued three defendants, including a contractor and his subcontractor and the Ford Motor Company, and, there as here, in the midst of trial, plaintiff entered into an agreement with the two defendants other than Ford to dismiss the case as to them in return for a substantial sum of money, covenanting to cease and desist from further suit, but reserving all rights against Ford. There, as here, it was not contended that liability could be imposed upon Ford because of the negligence of the contractor and subcontractor under the doctrine of respondeat superior. It was conceded that the latter were independent contractors. Ford liability, if any, was based upon its alleged independent negligence in directing that the painting and floor work proceed simultaneously without taking any steps to warn against dangers implicit in the dual operation. The court also considered the question of the responsibility of the defendant to provide a safe place to work under the Ohio Statutes and the question of the standard of

conduct required of one in defendant's position toward an employee of an independent contractor working on his premises.

In that case, the Court of Appeals held that defendant had violated no duty to the plaintiff under the Ohio safe place statutes since defendant was not an insurer and was under no duty to foresee that the employees of the independent contractor or subcontractors would be negligent. It also held that if Ford's liability in the case were based upon a failure to warn, the Ohio law would clearly require a decision in Ford's favor. It was also held that the simultaneous progress of the painting and floor laying was as obvious to plaintiff as to Ford and consequently, there was no duty to warn the plaintiff of that situation. The court further declared the affirmative action of Ford in simultaneously arranging for the dual operation of the floor laying and overhead painting would not create liability as to Ford and cited as authority the decision of the Supreme Court of Ohio in **Schwarz v. General Electric Realty Corp.,** 163 Oh St 354, 126 N. E. (2d) 906, and concluded the Schwarz case directly points to the conclusion that Ford was entitled to judgment under the law of Ohio on that issue.

While the decision in the case is not binding upon this Court, the court, in our opinion, so clearly and accurately analyzed the decisions of the Ohio Courts as bearing upon a fact situation so closely similar to the facts here presented that the same conclusion with respect to the applicable law must be reached by us in the instant case. Among other cases cited and considered by the Court of Appeals of the Sixth Circuit in the review of Ohio cases are the following:

**Pare v. Gemco Engineering & Mfg. Co.,** 95 Oh Ap 141, 118 N. E. (2d) 206.

Schwarz v. General Electric Realty Corp., supra.

**Bosjnak v. Superior Sheet Steel Co.,** 145 Oh St 538, 61 N. E. (2d) 305.

**Wellman v. East Ohio Gas Co.,** 160 Oh St 103, 113 N. E. (2d) 629.

**Davis v. Charles Shutrump & Sons Co.,** 140 Oh St 89, 42 N. E. (2d) 663.

**Hozian v. Crucible Steel Casting Co.,** 132 Oh St 453, 9 N. E. (2d) 143.

We feel that a review of these Ohio cases, so ably discussed in the opinion, would be merely repetitious and would serve no useful purpose. Of course, the decisions of the Ohio Supreme Court there cited are binding upon this court and take precedence over general text authorities.

In conclusion, suffice to say, we find no evidence in the record of joint and concurrent negligence on the part of Ford in its relations with its independent contractors which would impose upon the defendant liability for the injuries sustained by the plaintiff either by reason of the control Ford reserved over the premises or the control it reserved over operations of the contractors. We conclude, therefore, that the motions of defendant to arrest the testimony from the jury at the close of the evidence and enter judgment for the defendant at the close of all the evidence should have been granted, failing in which the court should have granted the motion for judgment non obstante veredicto.

Holding these views, we find it unnecessary to discuss the ground of error to the effect that the trial court erred to the prejudice of defendant by its refusal to grant judgment based on plaintiff's acceptance of

178

$30,000 in satisfaction of his claims in release of original defendants, Johnson, Drake & Piper, Inc., and Smith & Oby Company, although it is our view that if there was evidence here presented showing that Ford was jointly and concurrently liable, if liable at all, the covenant not to sue one or more of the joint tort feasors would not extinguish the rights of the plaintiff to recover against Ford in view of the express reservation of the plaintiff as to rights against Ford.

Proceeding now to render the judgment which the trial court should have rendered, the judgment for plaintiff is reversed and final judgment is rendered for the defendant.

Exceptions noted. Order see journal.

KOVACHY, PJ, SKEEL and HURD, JJ, concur.