WALKER ET AL., APPELLANTS, *v.* MID-STATES TERMINAL, INC. ET AL., APPELLEES.

(No. L-83-278—Decided March 9, 1984.)

*David M. Mohr,* for appellants.
*Robert J. Potter, James R. Jeffrey* and *Byron S. Choka,* for appellees.

DOUGLAS, J. This case comes before this court on appeal from judgment of the Lucas County Court of Common Pleas.

This case arose from the following facts and circumstances. On or about October 16, 1978, appellee Mid-States Terminal, Inc. (hereinafter referred to as "Mid-States") entered into a written contract with appellee Stout Construction Company (hereinafter referred to as "Stout") for the construction of grain silos on Mid-States' premises located on Miami Street in the city of Toledo, Ohio. On or about December 27, 1979, one of Stout's employees, Lee Walker, Jr., met his death, and another, Robert Gabriel, sustained permanently disabling injuries as a result of a construction accident involving a material hoist.

The material hoist was being used at the time of the accident to lift the two employees to a level where they could remove wood forms which had been used in the construction of the silos.

Although Stout could have rented an Underwriters Laboratory-approved personnel hoist for this purpose, it chose instead to modify a material hoist by splicing the cable to permit the hoist to reach the necessary height of two hundred eighty-five feet. According to the testimony of the president of Stout, the company's safety policies prohibited both the use of material hoists for personnel and the splicing of cables in either material or personnel hoists.

While the material hoist was being used to lift the two employees, the point at which the cables had been spliced reached a small opening in the concrete at the top of the silo through which the cable passed. Although the opening was large enough to permit the cable to flow freely, it was not large enough to permit the clips attached to the spliced point to pass through. Accordingly, as the clips reached the opening, the cable jammed, tensed and broke, and the hoist fell approximately one hundred forty-five feet to the ground.

Subsequently, appellants, Carolyn J. Walker, administratrix of the estate of Lee Walker, Jr., and Robert Gabriel, instituted this cause of action in the Lucas County Court of Common Pleas against appellees Mid-States and Stout. The trial court granted summary judgment in favor of Mid-States and Stout,[1] and appellants thereafter instituted this appeal, presenting the following assignments of error:

"I. The trial court erred in holding that as a matter of law the appellee Mid-States Terminal, as owner of the premises, owed no duty to the appellants.

"II. The trial court erred in granting summary judgment for defendant Stout Construction Company and against appellants since the worker's [sic] compensation law does not bar the pursuit of a civil remedy by an employee or his estate when the injury and/or death of the employee is either the result of an employer's act in a dual or second capacity, separate and apart from its status as an employer, or the result of an intentional tort committed by the employer."

In their first assignment of error, appellants contend that the trial court erred in granting summary judgment in favor of Mid-States on the ground that Mid-States owed no duty of care to appellants. In support of their assignment of error, appellants argue that Mid-States had a duty to furnish appellants with a safe place of employment pursuant to R.C. 4101.11 and 4101.12, which provide, respectively, as follows:

"Every employer shall furnish employment which is safe for the employees engaged therein, shall furnish a place of employment which shall be safe for the employees therein and for frequenters thereof, shall furnish and use safety devices and safeguards, shall adopt and use methods and processes, follow and obey orders, and prescribe hours of labor reasonably adequate to render such employment and places of employment safe, and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees and frequenters."

"No employer shall require, permit, or suffer any employee to go or be in any employment or place of employment

---

[1] In reviewing the record presented to this court, we note that the disposition of certain parties, denominated Master Electric Motor Company; Master Electric Company; Master Electric Company, Master Reeves Division and A.B.C. Inc. in the amended complaints, is not clear upon the face of the record. The parties, however, have not raised this issue; and it further appears from the answer of defendant Reliance Electric, in whose favor the trial court granted judgment, that its Master Division is, in fact, the corporate embodiment of the foregoing named entities. For those reasons, we shall proceed to consider the merits of this appeal.

which is not safe, and no such employer shall fail to furnish, provide, and use safety devices and safeguards, or fail to obey and follow orders or to adopt and use methods and processes reasonably adequate to render such employment and place of employment safe. No employer shall fail to do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees or frequenters. *No such employer or other person shall construct, occupy, or maintain any place of employment that is not safe.*" (Emphasis added.)

Thus, pursuant to R.C. 4101.11 and 4101.12, an employer has a statutory duty to provide a safe place of employment and to take those measures reasonably necessary to protect "* * * the life, health, safety, and welfare" of the employees and frequenters of his place of employment. In this case, however, appellants were employees of Stout, an independent contractor, retained to construct grain silos on Mid-States' property. In such cases, the Ohio Supreme Court has determined that the liability of the owner of the property for injuries sustained by employees of an independent contractor turns upon the retention of possession and control of the premises by the owner. See *Hirschbach* v. *Cincinnati Gas & Elec. Co.* (1983), 6 Ohio St. 3d 206, 208-209; *Comerford* v. *Jones & Laughlin Steel Corp.* (1959), 170 Ohio St. 117, 120 [10 O.O.2d 11]; *Wellman* v. *East Ohio Gas Co.* (1953), 160 Ohio St. 103, 106-109 [51 O.O. 27]; *Bosjnak* v. *Superior Sheet Steel Co.* (1945), 145 Ohio St. 538 [31 O.O. 188], paragraph one of the syllabus. Clearly, the owner of the premises may be held liable for injuries sustained as a result of hazards in existence at the time the independent contractor and his employees entered the premises or in those areas of the premises over which the owner retained possession and control.

In the case *sub judice,* however, appellants were injured as a result of the misuse of equipment brought onto the premises by their employer, Stout. Appellants contend, however, that Mid-States retained such control over the construction project by virtue of the terms of its contract with Stout and that the provisions of R.C. 4101.11 and 4101.12 are applicable to impose liability upon Mid-States in this case.

In support of their contention, appellants urge our consideration of the Ohio Supreme Court's recent decision in *Hirschbach, supra,* in which the court held in the syllabus that:

"One who engages the services of an independent contractor, and who actually participates in the job operation performed by such contractor and thereby fails to eliminate a hazard which he, in the exercise of ordinary care, could have eliminated, can be held responsible for the injury or death of an employee of the independent contractor."

In *Hirschbach,* the defendant, through its inspector, actually directed the placement of a winch, in violation of safety standards and over the objections of the employees of the independent contractor, which resulted in the death of one of the employees. Although appellants do not contend that Mid-States was directly involved in the decision to use the modified material hoist for personnel, appellants argue that Mid-States reserved control over the premises and the methods of construction in sections 1.10 and 1.12 of the contract, which provide, respectively, as follows:

"1.10 *EMERGENCIES*

"In an emergency or threatened emergency affecting or liable to affect the safety of life or property, either party shall have the right and authority to stop the work and/or *order and direct such changes therein or in the methods, plant and tools used by the Contractor or Owner,* as necessary in the circumstances."

"1.12 *INSPECTION AND TEST-ING*

"All plant to be provided, work to be performed, and material and equipment to be supplied pursuant to the contract *shall at all reasonable times and on reasonable notice be subject to inspection and testing by Owner or its inspector.* Any special test which Owner requires are set forth in the Specifications. The Contractor shall cooperate with Owner or inspector and shall make reasonably available every facility which the Contractor possesses for inspecting and testing." (Emphasis added.)

Additionally, appellants note that one of Mid-States' employees, Stan Kobylak, periodically visited and inspected the construction site. Mid-States contends, however, that Kobylak never "participated" in any job operation but merely inspected the construction site to determine whether the work was being performed in accordance with the specifications in the contract and that Mid-States, therefore, could not be held responsible for appellants' injuries.

A careful review of the decision reveals that, in accordance with previous case law, the determination as to the applicability of the Ohio "frequenter" statutes (R.C. 4101.01 *et seq.*) in the *Hirschbach* case turns upon a finding that the defendant had retained custody and control over the premises, as established by the fact of the inspector's direct participation in the operations of the independent contractor. See *Hirschbach, supra,* at 208, wherein the Ohio Supreme Court held as follows:

"There is no question that CG&E [the defendant] had custody and control over the premises where the work was being performed. Hence the Ohio 'frequenter' statutes are applicable here."

Further, see R.C. 4101.01(C) defining "employer" as "* * * *every person,* firm, corporation, agent, manager, representative, or other person having *control or custody* of any employment,

*place of employment,* or employee." (Emphasis added.)

Considering the foregoing, we find that sufficient evidence was presented to establish a retention of custody and control over the construction site by Mid-States and to raise an issue of fact for the jury as to whether, by the reasonable exercise of the rights retained by Mid-States by virtue of its contract with Stout, Mid-States could have discovered and eliminated the hazard which caused the tragic death of one employee and the permanent disablement of another.

For the foregoing reasons, we find that the trial court erred in granting summary judgment in favor of Mid-States and, therefore, find appellants' first assignment of error well-taken.

In their second assignment of error, appellants contend that the trial court erred in determining that Stout was immune from suit pursuant to the Workers' Compensation Law. In support of their contention, appellants raise both the intentional tort and dual capacity exceptions to the general rule of employer immunity from suit under the Workers' Compensation Law.

Section 35, Article II of the Ohio Constitution provides the basis for legislative enactments in the area of workers' compensation:

"For the purpose of providing compensation to workmen and their dependents, for death, injuries or occupational disease, occasioned in the course of such workmen's employment, laws may be passed establishing a state fund to be created by compulsory contribution thereto by employers, and administered by the state, determining the terms and conditions upon which payment shall be made therefrom. Such compensation shall be in lieu of all other rights to compensation, or damages, for such death, injuries, or occupational disease, and any employer who pays the premium or compensation provided by

law, passed in accordance herewith, shall not be liable to respond in damages at common law or by statute for such death, injuries or occupational disease. * * *"

Chapter 4123 of the Ohio Revised Code was enacted pursuant to the foregoing constitutional authority and provides the legislative scheme for the workers' compensation system. With regard to employer immunity from suit, R.C. 4123.74 specifically provides as follows:

"Employers who comply with section 4123.35 of the Revised Code shall not be liable to respond in damages at common law or by statute for any injury, or occupational disease, or bodily condition, received or contracted by any employee *in the course of or arising out of his employment,* or for any death resulting from such injury, occupational disease, or bodily condition occurring during the period covered by such premium so paid into the state insurance fund, or during the interval of time in which such employer is permitted to pay such compensation directly to his injured employees or the dependents of his killed employees, whether or not such injury, occupational disease, bodily condition, or death is compensable under sections 4123.01 to 4123.94, inclusive, of the Revised Code." (Emphasis added.)

Thus, complying employers are generally immune from suit for any injury arising out of the course of employment. In *Blankenship* v. *Cincinnati Milacron Chemicals* (1982), 69 Ohio St. 2d 608 [23 O.O.3d 504], certiorari denied (1982), 459 U.S. 857, however, the Ohio Supreme Court in the syllabus held that:

"An employee is not precluded by Section 35, Article II of the Ohio Constitution, or by R.C. 4123.74 and 4123.741 from enforcing his common law remedies against his employer for an intentional tort."

Appellants contend that the conduct of Stout's supervisory personnel in using a material hoist for personnel and in splicing the cable, both in violation of Stout's safety policies, constituted an intentional tort as contemplated by *Blankenship; supra.* Stout contends, however, that said conduct did not rise to the level of intentional tort for the reason that said conduct was neither willful nor wanton, the evidence presented not having indicated that Stout had actual knowledge of the hazard or had willfully withheld any information regarding the hazard from its employees.

Although the Ohio Supreme Court does not specifically define "intentional tort" in *Blankenship, supra,* the cases cited therein distinguish injuries arising from accidents which are unforeseen, unexpected and unusual and those arising from willful misconduct. See *Blankenship, supra,* at 612-614, footnotes 7-11.

Further, negligence is distinguished from wanton or willful misconduct in 39 Ohio Jurisprudence 2d (1959) 521-523, Negligence, Section 25, as follows:

"* * * Negligence is synonymous with *heedlessness, carelessness, thoughtlessness, disregard, inattention, inadvertence, remissness, and oversight;* it does not necessarily involve the conscious purpose to do a wrongful act, or to omit the performance of a duty, and intent, purpose, or design need not be proven. Wilfulness, on the other hand, implies design, set purpose, intention, deliberation. Accordingly, whenever an exercise of the will is exerted, there must be an end of inadvertence, and to say that an injury resulted from the negligent and wilful conduct of another is to affirm that the same act is the result of two opposite mental conditions, heedlessness, and purpose or design. A defendant might be guilty of the grossest negligence, and his acts might be fraught with the direst consequences, without having those elements of intent and purpose necessary to constitute wil-

ful tort. Negligence and wanton misconduct are independent; and negligence, however gross, is not synonymous with wanton misconduct.

"Knowledge of existing conditions is essential to establish wanton and wilful misconduct. It is, of course, not necessary that the defendant should have knowledge of the peril of any particular person, or that he should have intended to do injury to some particular person, but, on the other hand, *any general knowledge or information that other persons are placed in a position of peril by his reckless and heedless conduct would amount to a legal wilful tort.* This doctrine is based upon the well-known principle that a person is presumed to intend the natural and logical consequences of his acts. Wilful tort also involves the element of malice or ill will, although it is not necessary to show actual malice or ill will. It may be shown by *indifference to the safety of others,* after knowledge of their danger, or failure after such knowledge to use ordinary care to avoid injury." (Emphasis added. Citations omitted.)

Applying the foregoing to the facts in the case now before us, we find that the evidence presented raised an issue regarding the intentional tort exception to the general rule of employer immunity under the Workers' Compensation Law in that the evidence tended to show conduct on the part of Stout, through its supervisory personnel, in modifying and using a material hoist for personnel, which was willfully violative of Stout's safety policies and in wanton disregard of appellants' safety.

To hold otherwise would encourage employers, so disposed, to sacrifice the safety of their employees on the altar of expedience and profit by permitting the knowing violation of safety standards to be "costed out" under the workers' compensation system.

For those reasons, we find that the trial court erred in granting summary judgment in favor of Stout. However, it appears from our review of the record that additional evidence regarding this issue may yet be introduced. We would, therefore, decline to enter summary judgment in favor of appellants, in accordance with App. R. 12(B) and the decision of the Ohio Supreme Court in *Houk* v. *Ross* (1973), 34 Ohio St. 2d 77 [63 O.O.2d 119], as premature.[2]

Stout further contends, however, that appellants' cause of action is barred by their acceptance of benefits under the Workers' Compensation Law on the ground that the remedies are mutually exclusive. In *Delamotte* v. *Midland Ross* (1978), 64 Ohio App. 2d 159 [18 O.O.3d 117], however, this court unanimously held in the first paragraph of the syllabus that:

"1. An employee's remedy under the Workers' Compensation Act *is not exclusive,* and he may resort to a civil action in tort when he has been injured by an employer's intentional or malicious tort." (Emphasis added.)

Further, in reaching its decision in *Blankenship, supra,* at 613-615, the Ohio Supreme Court reasoned as follows:

"In this regard, this court further agrees with the *Delamotte* court that where an employee asserts in his complaint a claim for damages based on an

---

[2] The foregoing represents a compromise position reached by this court in order to render a majority decision in this case. The writing judge, however, believes that the evidence presented clearly established that Stout committed an intentional tort against appellants through the conduct of its supervisory personnel and that no genuine issue of *material* fact remains to be determined and that summary judgment should be granted by this court to appellants on this issue, pursuant to the teachings of *Houk, supra.* This holding is buttressed further by the fact that Stout moved for summary judgment, thereby indicating that there was no issue of *material* fact remaining.

intentional tort, '* * * the substance of the claim is not an "injury * * * received or contracted by any employee in the course of or arising out of his employment" within the meaning of R.C. 4123.74 * * *.' *Id.* No reasonable individual would equate intentional and unintentional conduct in terms of the degree of risk which faces an employee nor would such individual contemplate the risk of an intentional tort as a natural risk of employment. *Since an employer's intentional conduct does not arise out of employment,* R.C. 4123.74 does not bestow upon employers immunity from civil liability for their intentional torts and an employee may resort to a civil suit for damages. Accord *Barley* v. *Harrison Manufacturing* (No. E-80-75, May 22, 1981), Sixth District Court of Appeals, unreported; *Pariseau* v. *Wedge Products, Inc.* (No. 43195, May 7, 1981), Eighth District Court of Appeals, unreported.

"This holding not only comports with constitutional and statutory requirements, but it is also consistent with the legislative goals which underlie the Workers' Compensation Act.

"The workers' compensation system is based on the premise that an employer is protected from a suit for negligence in exchange for compliance with the Workers' Compensation Act. The Act operates as a balance of mutual compromise between the interests of the employer and the employee whereby employees relinquish their common law remedy and accept lower benefit levels coupled with the greater assurance of recovery and employers give up their common law defenses and are protected from unlimited liability. *But the protection afforded by the Act has always been for negligent acts and not for intentional tortious conduct.* Indeed, workers' compensation Acts were designed to improve the plight of the injured worker, and *to hold that intentional torts are covered under the Act would be tanta-*

*mount to encouraging such conduct,* and this clearly cannot be reconciled with the motivating spirit and purpose of the Act.

"It must also be remembered that the compensation scheme was specifically designed to provide less than full compensation for injured employees. *Damages such as pain and suffering and loss of services on the part of a spouse are unavailable remedies to the injured employee. Punitive damages cannot be obtained.* Yet, these damages are available to individuals who have been injured by intentional tortious conduct of third parties, and there is no legitimate reason why an employer should be able to escape from such damages simply because he committed an intentional tort against his employee.

"In addition, one of the avowed purposes of the Act is to promote a safe and injury-free work environment. (R.C. 4101.11 and 4101.12.) Affording an employer immunity for his intentional behavior certainly would not promote such an environment, for an employer could commit intentional acts with impunity with the knowledge that, at the very most, his workers' compensation premiums may rise slightly." (Emphasis added. Footnotes omitted.)

Upon careful consideration of the foregoing language, we find that the Ohio Supreme Court drew the distinction regarding intentional tort on the basis of whether the *employer's conduct* arose out of the employment and not whether the injury occurred in the course of employment as to the employee. Thus, the employee would not be precluded from pursuing his remedy under the Workers' Compensation Law in that the injury arose in the course of his employment. Further, see *Blankenship, supra,* at 615, wherein the Ohio Supreme Court held that: "* * * the facts will demonstrate whether an intentional tort occurred or whether the injuries received by appellants were in-

curred in the course of and arising from appellants' employment such that the worker's compensation remedy would be exclusive."

Appellants further contend that Stout, by reason of its manufacture of the materials hoist in question, was not immune from suit pursuant to the Workers' Compensation Law. In *Guy* v. *Arthur H. Thomas Co.* (1978), 55 Ohio St. 2d 183 [9 O.O.3d 138], syllabus, the Ohio Supreme Court set forth the following with respect to the dual-capacity exception to employer immunity under the Workers' Compensation Law:

"Where an employer-hospital occupies a second or dual capacity, as an administering hospital, that confers upon it traditional obligations unrelated to and independent of those imposed upon it as an employer, an employee injured, as a result of a violation of the obligations springing from employer-hospital's second or dual capacity, is not barred by either Section 35 of Article II of the Ohio Constitution or R.C. 4123.74, Ohio Workers' Compensation Law, from recovering in tort from that employer-hospital."

Our review of the record reveals that Stout manufactured *personnel* elevators for sale to the public but did not market material hoists. The record further indicates that the material hoist in issue was constructed and modified by and solely for use of Stout's employees.

Stout contends that the foregoing facts preclude application of the dual-capacity doctrine in this case for the reason that the particular type of hoist used was not commercially marketed. We do not agree. Appellants herein were injured as a result of a defective elevator manufactured by their employer who manufactured elevators for commercial sale. It would be ludicrous to hold that Stout could be shielded from liability as a manufacturer solely on the basis that the particular model of elevator used for its employees was not one that Stout commercially marketed. Further, such a decision in this case would, in fact, reward Stout for violating its own safety policy prohibiting the use of material hoists for personnel. Cf. *Simpkins* v. *Delco Moraine Div.* (1981), 3 Ohio App. 3d 275; *Knous* v. *Ridge Machine Co.* (1979), 64 Ohio App. 2d 251 [18 O.O. 3d 220], in which the employers did not generally market the class of product from which the injury arose.

For the foregoing reasons, we find appellants' second assignment of error well-taken.

In summary, we find as follows:

1. That the trial court erred in granting summary judgment in favor of Mid-States for the reason that sufficient evidence was presented to establish a retention of custody and control over the construction site by Mid-States so as to impose a duty of care on the part of Mid-States to appellants, pursuant to the Ohio "frequenter" statutes, and to raise an issue of fact for the jury as to whether Mid-States failed to exercise reasonable care in fulfilling that duty.

We, therefore, reverse the trial court's judgment, granting summary judgment in favor of Mid-States, and remand for further proceedings in accordance with law.

2. That the trial court erred in granting summary judgment in favor of Stout for the reason that the evidence presented raised an issue regarding the intentional tort exception to the general rule of employer immunity under the Workers' Compensation Law.

We, therefore, reverse the trial court's judgment, granting summary judgment in favor of Stout. Finding, however, that additional evidence may be presented regarding this issue, we remand for further proceedings in accordance with law, not limited to or excluding the filing of a motion for summary judgment by appellants.

3. That an employee's remedy under the Workers' Compensation Act is not exclusive when the injuries in question have been sustained as a result of an employer's intentional tort.

4. That the trial court erred in granting summary judgment in favor of Stout for the reason that the evidence presented established the applicability of the dual-capacity exception to employer immunity under the Workers' Compensation Law and that appellants are, therefore, entitled to judgment as a matter of law on the issue of Stout's liability under the dual-capacity doctrine.

We, therefore, reverse the trial court's judgment, granting summary judgment in favor of Stout, and, in accordance with App. R. 12(B), enter judgment in favor of appellants on the issue of Stout's liability in its dual capacity. See *Houk* v. *Ross, supra.* We further remand for further proceedings in accordance with law as to the issue of damages.

On consideration whereof, judgment of the Lucas County Court of Common Pleas is reversed and this cause is remanded to the Lucas County Court of Common Pleas for further proceedings in accordance with law and not inconsistent with this opinion.

*Judgment reversed and cause remanded.*

RESNICK, J., concurs.

CONNORS, P.J., concurs in part and dissents in part.

CONNORS, P.J., concurring in part and dissenting in part. I concur with the second paragraph of the syllabus and agree that an issue of fact exists as to whether Stout committed an intentional tort. As to the first and third paragraphs of the syllabus, I respectfully dissent.

In the first paragraph of the syllabus, the majority holds that the owner of property who engages the services of an independent contractor may be held liable under R.C. 4101.01 *et seq.,* if the owner has retained the right to custody and control of the premises. Typically, the owner of property who engages the services of an independent contractor will retain the right of custody and control over the premises as it is, after all, his property and he is interested in seeing the independent contractor's work progress to completion. I am of the opinion that the holding of the majority will, in effect, tend to make such owners insurers of the safety of the employees of independent contractors.

I would follow the decision in *Wellman* v. *East Ohio Gas Co.* (1953), 160 Ohio St. 103, [51 O.O. 27], wherein the court held as follows:

"1. Where an independent contractor undertakes to do work for another in the very doing of which there are elements of real or potential danger and one of such contractor's employees is injured as an incident to the performance of the work, no liability for such injury ordinarily attaches to the one who engaged the services of the independent contractor.

"2. One who engages an independent contractor to do work for him ordinarily owes no duty of protection to the employees of such contractor, in connection with the execution of the work, who proceeds therewith knowing and appreciating that there is a condition of danger surrounding its performance."

See, also, *Millhouse* v. *General Tire & Rubber Co.* (1983), 9 Ohio App. 3d 203.

The holding in *Wellman* appears to be controlling in the instant case. Further, the record in the case at bar indicates that Mid-States did not actively participate or supervise the activities of Stout, even though a contract between the parties permitted Mid-States to do so, but merely checked on the progress

of the construction in order to determine when Stout was entitled to compensation under the construction contract. Accordingly, I would find *Hirschbach* v. *Cincinnati Gas & Elec. Co.* (1983), 6 Ohio St. 3d 206, distinguishable from the instant case because the holding in *Hirschbach* is expressly limited to a situation where the employer actually participated in the job operation.

In the third paragraph of the syllabus, the majority enters judgment, as a matter of law, in favor of appellants upon finding that Stout occupied a dual capacity with regard to appellants. I dissent, as I find that, at the very least, an issue of fact exists as to whether such a dual capacity existed.

The case law fails to support the majority's holding that where an employer manufactures a piece of equipment solely for use by its employees it will be held liable under the dual capacity doctrine if it manufactures the general class of equipment for sale to the public. In *Knous* v. *Ridge Machine Co.* (1979), 64 Ohio App. 2d 251 [18 O.O.3d 220], the court held as follows:

"1. An employer is not considered to be engaged in the sale of die casting machines to the general public where the machines were manufactured by the employer for use in the production of die castings by the employer in the principal course of the employer's business and where a limited number of said machines were supplied to other corporate entities under agreements limiting the use and resale of the machines.

"2. An employer who manufactures or designs and assembles a machine for the sole use of its own employees in its own production operations is not subject to a manufacturer's liability when his own employee is injured while repairing or using that machine.

"3. If the hazard arose out of the status of the employee during his relationship to his employer, rather than a hazard to which the employee was subjected as a member of the general public, the dual capacity doctrine does not apply. On the other hand, if the hazard to the employee arose out of his status as a member of the general public, the fact that he, incidentally, is an employee of the one creating the hazard should not bar the application of the dual capacity doctrine.

"4. Where an employee is injured in repairing a die casting machine, manufactured by the employer, and where the manufacturing of the machine is auxiliary to the principal business of producing die castings, the injuries arose out of the employer-employee relationship, rather than from a user-manufacturer relationship."

In *Simpkins* v. *Delco Moraine Div.* (1981), 3 Ohio App. 3d 275, the court held as follows in paragraph one of the syllabus:

"1. Where an employee brings an action against his employer for injuries sustained in his employment as the result of an allegedly defective hoist, which was neither designed nor manufactured for use by the public but was intended solely for use by the company's employees, the dual capacity doctrine is not applicable and the employee's remedy against his employer is limited exclusively to workers' compensation benefits."

The record in the instant case indicates that the hoist involved in the accident was not designed or manufactured for sale to the general public but was fabricated solely for use by Stout's employees. The record indicates that Stout did manufacture and sell one-man service elevators which were not used in construction but were permanently installed in grain silos. Under these facts, I find that *Knous, supra,* and *Simpkins, supra,* preclude application of the dual capacity doctrine or, at least, create an issue of fact as to whether the hoist involved herein was manufactured and

sold to the general public. Accordingly, I dissent from the decision of the majority in this regard.

Coming now to the specific assignments of alleged error, and being cognizant of the fact that this case comes to us on summary judgments from the trial court, I find the appellants' first assignment of error not well-taken, and the second assignment of error well-taken, for the reasons set forth above.