CURLESS, Exrx., Appellant,

v.

LATHROP COMPANY; Toledo Edison Company et al., Appellees.

[Cite as *Curless v. Lathrop Co.* (1989), 65 Ohio App.3d 377.]

Court of Appeals of Ohio,
Ottawa County.

No. OT–89–9.

Decided Nov. 24, 1989.

*William H. Bartle,* for appellant.

*John J. McHugh,* for appellees Toledo Edison Company and Cleveland Electric Illuminating Company.

GLASSER, Judge.

This matter is before the court on appeal from a judgment of the Ottawa County Court of Common Pleas.

The facts giving rise to this appeal are as follows. On November 6, 1984, James Curless was employed as a laborer by the Lathrop Company. Lathrop had been engaged by defendants-appellees, Toledo Edison and Cleveland Electric Illuminating Company, to perform certain job operations at the Davis–Besse Nuclear Power Plant in Oak Harbor, Ohio. Among the jobs Lathrop contracted to perform was a reinforcement of cement columns used to support the cooling tower.

In order to reinforce the structure, each column was encircled with a steel form up to a height of approximately fifteen feet. A scaffold was constructed adjacent to the column and two Lathrop employees were assigned to work on the platform. The employees were assigned the task of guiding a cement bucket, hoisted by a crane, to a position over the circular form so that cement could be dropped into the form. The cement was then mixed with a vibrator.

After each column had been reinforced up to fifteen feet, the circular forms and scaffolding were raised an additional fifteen feet, to the top of the column. The cement pouring and vibrating processes were then repeated at the new height.

On November 6, 1984, Curless was working on a platform guiding the cement bucket into its proper position. Fellow Lathrop employee, Marvin Ohm, was working with Curless on the platform, operating the vibrator. The men had finished pouring cement for one column and were ready to move to another column. As he began to descend, Curless fell from the scaffold and was killed.

Plaintiff-appellant, Joann Curless, individually and as executrix of the estate of James Curless, filed a complaint August 16, 1985 naming Lathrop, the Ohio Edison Company, and appellees as defendants. Ohio Edison was dismissed without prejudice by a judgment entry dated August 26, 1985. Appellant filed an amended complaint on May 9, 1988 in which she alleged, *inter alia*, that appellees failed to provide Curless with a reasonably safe place to work by failing to ensure that the scaffolding was properly erected and maintained. Appellant's complaint sought $3,000,000 in compensatory and $1,000,000 in punitive damages.

On October 17, 1988, appellees moved for summary judgment. In a judgment entry filed February 22, 1989, the motion for summary judgment was granted. The trial court further ordered, pursuant to Civ.R. 54(B), that there was no just reason for delay. It is from the entry of summary

judgment in favor of Toledo Edison and Cleveland Electric Illuminating that appellant has appealed, setting forth the following six assignments of error:

"A.  The Trial Court Erred In Granting Defendants, Toledo Edison And Cleveland Electric Illuminating Company's, Motions For Summary Judgment Because:

"(1) Questions Of Fact Exist As To Whether Toledo Edison Retained *Sufficient Control Over Safety* At the Worksite Where James Curless Was Killed To Make It Responsible For State And Federal Safety Regulation Implementation.

"(2) Questions Of Fact Exist As To Whether Toledo Edison (Employer Of Independent Contractor) Voluntarily Assumed Responsibility For Safety Of The Worksite Where James Curless Was Killed, Making It Responsible For State And Federal Safety Regulation Implementation.

"(3) Questions Of Fact Exist As To Whether Toledo Edison Actively Participated In Regulating The Safety Of The Worksite At Which James Curless Was Killed So As To Make It Responsible For State and Federal Safety Regulation Implementation.

"(4) Questions Of Fact Exist As To Whether Toledo Edison Was Negligent In Voluntarily Providing Gloves To Employees Of The Independent Contractor Which Were Unsuitable For Climbing Scaffolding.

"(5) These Defendants, As Employers Of An Independent Contractor Who Was Required To Erect Scaffolding, Had a Non–Delegable Duty With Respect To The Proper And Safe Erection Of Said Scaffolding Pursuant To O.R.C. § 3791.06, 4101.11 and 4101.12.  (Adoption Of Restatement Of Torts § 424).

"(6) These Defendants, As Employers Of An Independent Contractor, Recognized That The Work To Be Performed By The Independent Contractor Was Likely To Create A Peculiar Risk Of Physical Harm To Others Unless Special Precautions Were Taken (State And Federal Regulations Followed).  Under These Circumstances, The Employer Of The Independent Contractor Should Be Liable To Those Injured As A Result Of The Failure Of The Independent Contractor To Exercise Reasonable Care.  (Adoption Of Restatement Of Torts § 416)."

Our analysis of appellant's first three assignments of error indicates that the issues raised in each argument are interrelated; therefore, we have evaluated these assignments of error simultaneously.  In her first assignment of error, appellant asserts that questions of fact exist as to whether appellees retained sufficient control over safety at the worksite so as to create responsibility for state and federal safety regulation implementation.  Second, appellant argues that questions of fact exist regarding appellees' "voluntary

assumption" of safety responsibilities, thereby creating an obligation to enforce safety regulations. In her third assignment of error, appellant suggests that questions of fact exist regarding whether appellees "actively participated" in worksite safety so as to require enforcement and compliance with regulations. Presenting her argument in three slightly different formats, appellant repeatedly asserts that, on the basis of the evidence presented, a jury could find that appellees retained sufficient control over the place of injury so as to impose liability for their alleged failure to exercise reasonable care.

A brief synopsis of relevant Ohio law is presented in order to understand the premise of appellant's underlying argument. In *Wellman v. East Ohio Gas Co.* (1953), 160 Ohio St. 103, 51 O.O. 27, 113 N.E.2d 629, the Supreme Court of Ohio set forth rules defining the scope of liability in similar circumstances. These rules have been followed to the present day. In *Wellman*, the independent contractor was engaged by the East Ohio Gas Company to lay pipes. The plaintiff, an employee of the independent contractor, was injured when a pipefitter, also employed by the independent contractor, attempted to remove a cap from a pressure-filled pipe. The cap blew off, striking plaintiff and fracturing one of his legs. Under these circumstances, the *Wellman* court stated, it was the independent contractor's " * * * duty to warn and protect the plaintiff, and no such duty devolved on defendant." *Id.* at 107, 51 O.O. at 29, 113 N.E.2d at 632. In summary, the court held:

"1. Where an independent contractor undertakes to do work for another in the very doing of which there are elements of real or potential danger and one of such contractor's employees is injured as an incident to the performance of the work, no liability for such injury ordinarily attaches to the one who engaged the services of the independent contractor.

"2. One who engages an independent contractor to do work for him ordinarily owes no duty of protection to the employees of such contractor, in connection with the execution of the work, who proceeds therewith knowing and appreciating that there is a condition of danger surrounding its performance.

"3. To establish 'actionable negligence' three essential elements must be shown, namely, a duty or obligation on the part of the person charged with such negligence to protect another from injury, a failure to discharge that duty, and an injury to such other proximately resulting from that failure." *Id.* at paragraphs one, two and three of the syllabus.

In *Hirschbach v. Cincinnati Gas & Elec. Co.* (1983), 6 Ohio St.3d 206, 6 OBR 259, 452 N.E.2d 326, the court held that the *Wellman* line of cases was not applicable under certain factual situations.

"One who engages the services of an independent contractor, and who actually participates in the job operation performed by such contractor and thereby fails to eliminate a hazard which he, in the exercise of ordinary care, could have eliminated, can be held responsible for the injury or death of an employee of the independent contractor." *Id.* at syllabus.

In *Hirschbach*, the independent contractor's employee was killed when he fell from a high tension electric tower owned by defendant, Cincinnati Gas & Electric Company ("CG & E"). Prior to the accident, the decedent was one of several employees who discussed the method of job operation with an inspector employed by CG & E. Despite safety concerns voiced by the independent contractor's employees, the inspector denied their request to modify the method of job operation. In view of the circumstances, the *Hirschbach* court stated that " * * * a jury could reasonably conclude that CG & E had sole control over the safety features necessary to eliminate the hazard." *Id.* at 208, 6 OBR at 259, 452 N.E.2d at 329. The court stated that *Hirschbach* was distinguishable from *Wellman.* In *Hirschbach*, stated the court, CG & E " * * * actually participated in the job operation performed by the crew of the independent contractor." *Id.*, citing *Schwarz v. Gen. Elec. Realty Corp.* (1955), 163 Ohio St. 354, 359, 56 O.O. 319, 321, 126 N.E.2d 906, 909–910.

In a recent decision, the court refused to expand the exception to *Wellman* announced in *Hirschbach. Cafferkey v. Turner Constr. Co.* (1986), 21 Ohio St.3d 110, 21 OBR 416, 488 N.E.2d 189. The *Cafferkey* court held:

"A general contractor who has not actively participated in the subcontractor's work, does not, merely by virtue of its supervisory capacity, owe a duty of care to employees of the subcontractor who are injured while engaged in inherently dangerous work." *Id.* at syllabus.

The plaintiffs in *Cafferkey* argued, *inter alia,* that certain provisions in the contract between Turner and the subcontractor as well as portions of Turner's safety manual revealed Turner's retention of safety control at the worksite. In response, the court stated that although the documents were evidence of concern, they did " * * * not constitute the kind of active participation in [the subcontractor's] work that is legally required to create a duty of care extending from Turner to [the subcontractor's] employees." *Id.* at 113, 21 OBR at 418, 488 N.E.2d at 192. See, also, *Eicher v. United States Steel Corp.* (1987), 32 Ohio St.3d 248, 512 N.E.2d 1165. Accordingly, the *Wellman* rule remains in effect subject only to the "actual participation" exception announced in *Hirschbach, supra.*

■ On a motion for summary judgment, the moving party has the burden of showing that no genuine issue exists as to any material fact and that he is entitled to judgment as a matter of law. See *Harless v. Willis Day Ware-*

*housing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 74, 375 N.E.2d 46, 47. When a motion is made "[p]ursuant to Civ.R. 56(C), summary judgment may be granted when it appears from the evidence submitted that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor." *Adkins v. Ontario* (1983), 8 Ohio St.3d 45, 46, 8 OBR 406, 407, 457 N.E.2d 317, 318.

In *Vetovitz Bros., Inc., v. Kenny Constr. Co.* (1978), 60 Ohio App.2d 331, 332, 14 O.O.3d 292, 293, 397 N.E.2d 412, 414, the Medina County Court of Appeals stated:

"Summary judgment is a procedural device to terminate litigation and to avoid a formal trial where there is nothing to try. It must be awarded with caution, resolving doubts and construing evidence against the moving party, and granted only when it appears from the evidentiary material that reasonable minds can reach only an adverse conclusion as to the party opposing the motion."

In the case *sub judice,* we are called upon to decide if the trial court correctly determined that the evidence submitted failed to establish a genuine dispute, *i.e.,* a question for the jury, as to whether appellees "actually participated" in Lathrop's job operation so as to create a duty to Curless as a matter of law.

Appellant asserts that the evidence establishes that appellees actively participated in safety concerns at the worksite. Appellant argues that a jury could find that such behavior is equivalent to participating in the work that led to Curless's death. Appellant contends that the evidence shows more than mere general supervision by appellees so as to raise the question of liability regardless of whether appellees controlled the day-to-day job operation.

In her argument before this court, appellant asserts that the record establishes that appellees contractually required Lathrop to follow safety regulations, held weekly meetings with Lathrop personnel, trained its own employees in safety regulations, monitored safety at the jobsite, and intervened in Lathrop's operation if they observed safety violations. In support of her argument, appellant directs us to *Walker v. Mid–States Terminal, Inc.* (1984), 17 Ohio App.3d 19, 17 OBR 71, 477 N.E.2d 1160, a case decided by this court prior to *Cafferkey, supra.* The employees in *Walker* were injured as a result of the misuse of equipment brought onto the premises by their employer, the independent contractor. In violation of its own company policy, the independent contractor used a material hoist to lift its working personnel after splicing the hoist's cable to enable it to reach the necessary height of two

hundred eighty-five feet. The cable jammed when the spliced portion would not fit into a small opening through which the cable passed. The cable broke and the two employees fell approximately one hundred forty-five feet to the ground.

In analyzing Ohio's "frequenter" statutes, R.C. 4101.11 [1] and 4101.12,[2] the *Walker* court observed that " * * * liability of the owner of the property for injuries sustained by employees of an independent contractor turns upon the retention of possession and control of the premises by the owner." *Id.* at 21, 17 OBR at 73–74, 477 N.E.2d at 1163. The *Walker* court identified a retention of control in the specific language of the contract between Mid–States and its independent contractor. A Mid–States' inspector's periodic visits to the work-site also helped to establish " * * * direct participation in the operations of the independent contractor." *Id.* at 22, 17 OBR at 75, 477 N.E.2d at 1164.

Two years after *Walker* was decided, the Supreme Court of Ohio held that a "concern" for safety exhibited by an owner in " * * * standard 'boilerplate' [contract] terminology * * * " and a safety manual, did " * * * not constitute the kind of active participation in [the independent contractor's] work that is legally required to create a duty of care extending from [the owner] to [the independent contractor's] employees." *Cafferkey, supra,* at 113, 21 OBR at 418, 488 N.E.2d at 192. The court stated that retention, by the landowner, of " * * * the ability to monitor and coordinate the activities of all subcontractors in order to ensure compliance with the architect's specifications * * * " did not constitute active participation in the subcontractor's work. *Id.*

In the case *sub judice,* appellees, by contract, directed Lathrop to " * * * comply with and cooperate in the enforcement by owner of all jobsite rules, * * * including without limitation those related to jobsite safety * * *."

---

1. R.C. 4101.11 is as follows:

"Every employer shall furnish employment which is safe for the employees engaged therein, shall furnish a place of employment which shall be safe for the employees therein and for frequenters thereof, shall furnish and use safety devices and safeguards, shall adopt and use methods and processes, follow and obey orders, and prescribe hours of labor reasonably adequate to render such employment and places of employment safe, and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees and frequenters."

2. R.C. 4101.12 is as follows:

"No employer shall require, permit, or suffer any employee to go or be in any employment or place of employment which is not safe, and no such employer shall fail to furnish, provide, and use safety devices and safeguards, or fail to obey and follow orders or to adopt and use methods and processes reasonably adequate to render such employment and place of employment safe. No employer shall fail to do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees or frequenters. No such employer or other person shall construct, occupy, or maintain any place of employment that is not safe."

We find that this language placed appellees in a supervisory capacity over the work performed by Lathrop; however, we do not find that it, standing alone, was evidence of appellees' active participation in Lathrop's work. Distinguishing the instant case from *Walker, supra,* we find that the written materials exchanged between appellees and Lathrop did not give appellees the right to " ' * * * order and direct such changes therein or in the methods, plant and tools used by the Contractor or Owner * * *.' " (Emphasis deleted.) *Walker, supra,* at 21, 17 OBR at 74, 477 N.E.2d at 1163 (quoting from the contract between Mid–States and the subcontractor). In other words, in the case *sub judice,* appellees had no contractual right to dictate the method of scaffold construction " * * * nor did [they] have any contractual rights with regard to the proper exercise of reasonable care to protect employees." *Mount v. Columbus & Southern Ohio Elec. Co.* (1987), 39 Ohio App.3d 1, 4, 528 N.E.2d 1262, 1265.

As appellant contends, the record indicates that appellees had inspection responsibilities at the worksite. The record also indicates that appellees held weekly meetings with Lathrop regarding its job progress; however, despite appellant's repeated insistence, we do not find that appellees gave safety directions to Lathrop employees at the worksite, nor do we find evidence showing that appellees acquiesced in worksite safety violations allegedly created by Lathrop.

The scaffold upon which Curless worked was constructed entirely by Lathrop carpenters. Although a portion of the scaffold material belonged to appellee, Toledo Edison, there is no indication that the *quality* of this material contributed to Curless's fall. Further, the record shows that *Lathrop* employees determined that, due to the nature of the job, it was necessary to place guard rails on three sides of the platform rather than four. Appellant appears to assert that appellees knew or should have known Lathrop's decision violated federal and state safety regulations and, by failing to correct the situation, appellees directly participated in events leading to Curless's death. We disagree.

The record shows that the lack of a fourth guard rail did not lead directly to Curless's death. Joe Van Showalter, a Lathrop employee on the jobsite the day Curless fell, testified that he " * * * watched Jim get *down on the right side* of the scaffolding; and he had his hand on one of the poles and a foot on one of the rungs and that's when I turned away." Additionally, under certain conditions, the absence of a fourth guard rail is clearly contemplated by Occupational Safety and Health Administration ("OSHA") and Ohio regulations. The relevant OSHA standard provides:

"(a) *General requirements for all scaffolds.* * * *

" * * *

"(ii) * * *

"Guardrails should all be 2 × 4 inches or the equivalent, installed no less than 36 inches or not more than 42 inches high, with a midrail, when required, of 1–x 4–inch lumber or equivalent.  Supports should be at intervals not to exceed ten feet.  * * * "  Section 1910.28, Title 29, U.S.Code.

The Ohio Administrative Code states that guard railing shall be installed on all unprotected sides of a stationary scaffold.  Ohio Adm.Code 4121:1–5–03(D)(1)(c)(i).  However, the code also recognizes that it may not always be feasible to install a rail on all open sides.

"(iii) When it is not practicable to install and use standard guard railing for employee protection on scaffolds, as required by this section, safety belts * * * may be used instead of standard guard railings."  Ohio Adm.Code 4121:1–5–03(D)(1)(c)(iii).

Expanding her argument that Curless's death was caused by a failure to comply with safety regulations, appellant also contends that a ladder should have been attached to the scaffold in order to facilitate safe access to the platform.  Following Curless's death, Lathrop was cited by OSHA for its failure to install an access ladder leading to the work platform.  However, James H. Newman, a Lathrop safety engineer, testified that after an investigation, the citation was withdrawn and it was determined that no ladder was required.  The testimony of Lathrop superintendent Ernest Hall indicates that ladders were installed following Curless's fall at " * * * the *suggestion* of OSHA * * * ."  (Emphasis added.)

Accordingly, we disagree with appellant's contention that summary judgment has permitted appellees to escape liability for safety violations which allegedly occurred at the worksite.  The evidence presented does not show that appellees knew or should have known of any violations, that violations actually occurred or that a violation or violations led directly to Curless's death.

Following the analysis set forth in *Eicher, supra,* we note that Curless was a Lathrop employee, and therefore under the direct control of the independent contractor and not appellees.  The primary responsibility for protecting one in Curless's circumstances rests upon Curless's employer, Lathrop.  *Eicher, supra,* 32 Ohio St.3d at 250, 512 N.E.2d at 1168.  The law will not be made to exchange the relative positions of appellees, which stood as "mere landowners" with respect to Curless, and Lathrop, which controlled the conditions of Curless's employment.  *Id.*

In addition to premising her argument on the contract executed between the parties, appellant asserts that a jury could find appellees *voluntarily* assumed co-responsibility for safety at the worksite and subsequently failed to exercise reasonable care. Appellant characterizes the evidence as showing more than mere general supervision over safety by appellees thereby necessitating a finding of actual participation and potential liability.

Our analysis of the evidence presented indicates that appellees did not interfere with Lathrop's operation nor did they dictate the manner or mode in which the job was to be performed. Lathrop did not seek appellees' permission when it decided to build the three-sided scaffold; further, appellees did not tell Lathrop's employees how to construct the scaffold or whether to continue wearing the asbestos gloves. The testimony of Lathrop employees clearly establishes that Lathrop employees took orders only from Lathrop supervisory personnel and that the risks inherent in the nature of the job were apparent not only to Lathrop personnel but to Curless and his fellow workers as well. For example, Carl Lazzara, a construction laborer formerly employed by Lathrop, stated that appellees told Lathrop's employees what they wanted done, *not* how they wanted them to do it. Although it was his opinion that appellees should have been at the worksite inspecting for safety violations, despite the fact that no Lathrop employees ever complained of such violations, Lazzara admitted that he never saw appellees examine the scaffolding. Nearly identical statements regarding appellees' role in the job's progress were made by Lathrop employees, Ohm and Joe Van Showalter.

Judy Brower, Toledo Edison's safety coordinator at Davis–Besse, stated that she never visited the jobsite until after Curless's fall. Asked why Toledo Edison employees were present at the worksite on a regular basis, Brower responded that they were "[m]onitoring the contract progress."

The Lathrop employee responsible for safety at the site was Ernest Hall. On direct examination, Hall was asked if " * * * anyone [was] in charge of safety for the Toledo Edison Company?" Hall answered: "Not on our site on a regular basis, no, I never had any contact with Toledo Edison safety people." Questioned further, Hall stated that he did not even know the names of any safety personnel employed by appellees at Davis–Besse. Lathrop engineer Newman was asked whether Toledo Edison made any recommendations with regard to safety; Newman responded, "[n]o, not to my knowledge."

Our analysis of the record leads us to conclude that the trial court correctly determined that the evidence submitted failed to establish a genuine dispute as to whether appellees actually participated in Lathrop's job operation. For the aforestated reasons, we find appellant's first, second and third assignments of error not well taken.

In her fourth assignment of error, appellant contends that a question of fact exists as to whether appellees were negligent in regard to the gloves provided to Lathrop employees. Appellant recognizes that at the time of Curless's fall, wearing the gloves was optional but asserts that appellees originally supplied the gloves and knew that Lathrop employees continued to wear them at the worksite.

As previously set forth, a general contractor owes no duty to the employee of an independent subcontractor for injuries that result from risks which are inherent in the subcontractor's assigned task. *Mount, supra,* 39 Ohio App.3d at 2, 528 N.E.2d at 1263. The only recognized exception to this rule is " * * * that the general contractor is liable if it 'actually participates in the job operation' and thereby negligently fails to eliminate a risk inherent in the independent subcontractor's job." *Id.* at 3, 528 N.E.2d at 1264.

In the case *sub judice,* appellees issued protective equipment, including the gloves, to Lathrop employees at the beginning of the project. The equipment was designed as protection against potentially harmful quantities of asbestos. Once it was determined by appellees that there was no danger and that the protective overgarments were unnecessary, Lathrop employees were told that they were no longer required to wear them. Nevertheless, many Lathrop employees continued to wear the gloves because, although they were not warm, they became cement-covered and could be thrown away at the end of each day. The employees found it economical to use appellees' gloves rather than ruin their personal gloves.

Asked if he " * * * ever expressed concern to anybody at Lathrop about [the] gloves not giving [him] a proper grip [on the scaffold]," one Lathrop employee responded, "I may have. I don't remember. * * * No, I don't know." The same employee was asked if he ever heard Curless complain about the gloves; he answered, "[n]o, I didn't."

Construing the evidence most strongly in favor of appellant, we find that appellant has not set forth specific facts showing that there is a genuine issue as to appellees' active or actual participation or control over the decision by Lathrop employees, ostensibly including Curless, to continue to wear the asbestos protection gloves after they were proclaimed to be unnecessary. Appellant clearly had the burden of making such a showing at the summary judgment stage of this case. *Id.,* 39 Ohio App.3d at 4, 528 N.E.2d at 1265. For the aforestated reasons, we find appellant's fourth assignment of error not well taken.

Due to the nature of our analysis of the fifth and sixth assignments of error, appellant's final two arguments have been evaluated simultaneously.

In her fifth assignment of error, appellant asserts that appellees had a non-delegable duty regarding the proper and safe erection of scaffolding pursuant to R.C. 3791.06, 4101.11 and 4101.12. In support of her argument, appellant urges the court to adopt 2 Restatement of the Law 2d, Torts (1965), Section 424.

"One who by statute or by administrative regulation is under a duty to provide specified safeguards or precautions for the safety of others is subject to liability to the others for whose protection the duty is imposed for harm caused by the failure of a contractor employed by him to provide such safeguards or precautions." 2 Restatement of the Law 2d, Torts (1965) 411, Section 424.

This section is essentially a theory of "non-delegable duty," wherein an employer, who is under a statutory duty to do certain work carefully, cannot escape liability by delegating the work to an independent contractor. "Under this 'non-delegable duty' theory, the rationale is to place the tort duty and, therefore, the liability for negligence on, the employer, the party who is ultimately responsible for carrying on the activities." *Bramer v. United States* (C.D.Calif.1976), 412 F.Supp. 569, 572, affirmed (C.A.9, 1979), 595 F.2d 1141.

In her sixth assignment of error, appellant asserts that because appellees recognized the special risks of Lathrop's job operation, they should be liable for the harm caused by Lathrop's alleged failure to exercise reasonable care. Maintaining that the court should adopt Section 416 of the Restatement of Torts 2d, appellant contends that a jury should decide if peculiar risks were present which appellees recognized. Appellant further argues that Section 416 should be adopted by this court as an additional exception to the rule of non-liability set forth in *Wellman, supra.*

Section 416 provides:

"One who employs an independent contractor to do work which the employer should recognize as likely to create during its progress a peculiar risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the failure of the contractor to exercise reasonable care to take such precautions, even though the employer has provided for such precautions in the contract or otherwise." 2 Restatement of the Law 2d, Torts (1965) 395, Section 416.

The doctrine set forth in this section imposes vicarious or *respondeat superior* liability on the employer based on the nature of the task and the dangers inherent in the work unless special precautions are taken. *Marshall v. Southeastern Pennsylvania Transp. Auth.* (E.D.Pa.1984), 587 F.Supp. 258, 262.

Appellant asserts that she has presented evidence that Curless's death was the result of a failure to follow OSHA and Ohio safety regulations. This failure, appellant contends, created a peculiar risk of harm to Curless over and above the inherent dangers involved in scaffold work. Appellant argues that because Lathrop failed to take reasonable precautions to protect its employees from these peculiar risks, appellees are vicariously liable for the harm caused to appellant.

As recognized by the trial court and the parties to this appeal, no Ohio court has been asked to determine applicability of the aforementioned Restatement sections to a factual situation mirroring the case *sub judice.* In fact, our research has disclosed that Section 424 has never been evaluated by an Ohio court. Section 416 was mentioned briefly by the Lucas County Court of Common Pleas in *St. Julian v. Owens–Illinois, Inc.* (1978), 59 Ohio Misc. 66, 70, 11 O.O.3d 59, 62, 394 N.E.2d 359; however, no definitive statement regarding its application was set forth. Accordingly, we are faced with two questions of first impression in Ohio.

Notwithstanding the arguments urged upon us by appellant, we are faced with a preliminary question directed at the core of applicability: Is James Curless, as an employee of the independent contractor, an "other" and, therefore, within the auspices of Section 416 or 424?

■ A split of authority exists among the courts that have answered the question presented in appellant's final two assignments of error. A majority of states have declined to apply the sections to employees of independent contractors;[3] however, an opposite view has been adhered to by several jurisdictions.[4] Following a thorough analysis of the relevant sections, the remainder of Chapter 15 of the Restatement and existing decisions, we have determined that an employee of an independent contractor is not among the "others" who may premise a vicarious liability claim on Section 416 or 424 of the Restatement of the Law 2d, Torts. On the contrary, we hold that

---

**3.** See, *e.g., Johns v. New York Blower Co.* (Ind.App.1982), 442 N.E.2d 382; *Conover v. Northern States Power Co.* (Minn.1981), 313 N.W.2d 397; *Donch v. Delta Inspection Services, Inc.* (1979), 165 N.J.Super. 567, 398 A.2d 925; *Valdez v. Cillessen & Son, Inc.* (1987), 105 N.M. 575, 734 P.2d 1258; *Jones v. Chevron U.S.A., Inc.* (Wyo.1986), 718 P.2d 890; *Anderson v. Marathon Petroleum Co.* (C.A.7, 1986), 801 F.2d 936; and *Parsons v. Amerada Hess Corp.* (C.A.10, 1970), 422 F.2d 610.

**4.** See, *e.g., Chesapeake and Potomac Tel. Co. of Maryland v. Chesapeake Utilities Corp.* (Del.1981), 436 A.2d 314; *Corsetti v. Stone Co.* (1985), 396 Mass. 1, 483 N.E.2d 793; *Kemp v. Bechtel Constr. Co.* (1986), 221 Mont. 519, 720 P.2d 270; *BASF Corp. v. Standard Machine & Equip. Co.* (E.D.Mich.1988), 689 F.Supp. 723; *Moss v. Swann Oil, Inc.* (E.D.Pa.1977), 423 F.Supp. 1280.

"others" refers to the general public and/or others who have no relationship to the independent contractor.

There are several policy considerations behind limiting an owner's liability to third parties other than employees of an independent contractor. Following the analysis set forth by the Supreme Court of Washington in *Tauscher v. Puget Sound Power & Light Co.* (1981), 96 Wash.2d 274, 635 P.2d 426, we find that two of the most compelling reasons are as follows.

The rationale justifying an exception to the rule of landowner nonliability, *i.e.*, allowing an owner to shift liability away from itself by hiring an independent contractor, is not applicable to a case involving the employee of an independent contractor. *Id.*, 96 Wash.2d at 281, 635 P.2d at 430. Specifically, in Ohio, an owner who employs an independent contractor is already liable for its own negligence to *all* third parties, including employees of the independent contractor if the owner actively participates in the independent contractor's job operation, for negligence in the hiring of the independent contractor and for injuries resulting from latent defects on the land. Therefore, Ohio already imposes a duty of due care upon the landowner. Further, we find that a landowner's liability for harm resulting from the alleged negligence of the independent contractor should generally be limited to third parties " * * * because the employer has in a sense already assumed financial responsibility for the injuries to the employees in that the contract he or she pays to the independent contractor necessarily includes the costs of the insurance premiums that the independent contractor must pay for workers' compensation coverage. * * * The employee already has a remedy; one which the owner has paid for." *Id.* at 283, 635 P.2d at 430.

A second policy consideration is rooted in Ohio's scheme of statutory workers' compensation. Pursuant to Section 35, Article II, Ohio Constitution, and R.C. 4123.54, an employer is released from financial responsibility for on-the-job injuries to its employees. Accordingly, to expose a landowner to liability for injuries to employees of an independent contractor would subject the landowner to greater liability than if the owner had utilized its own employees. *Tauscher, supra.*

" * * * [T]o hold otherwise would serve to encourage owners to use their own employees (who may be inexperienced) and thereby escape liability for any negligent acts and conversely, discourage owners from hiring experienced independent contractors, who specialize in hazardous work." *Id.*, 96 Wash.2d at 282, 635 P.2d at 431.

Additional considerations were advanced by the Supreme Court of Wyoming in *Stockwell v. Parker Drilling Co., Inc.* (Wyo.1987), 733 P.2d 1029. Quoting from one of its earlier decisions, the *Stockwell* court stated:

" '[M]ost jurisdictions that have decided the issue have refused to apply the exception when an employee of the contractor is the injured party. * * * There are several good reasons for this view. First, if a bystander is injured by the negligence of a financially irresponsible contractor, the owner may be the bystander's only source of recompense. The bystander is a totally innocent third party having no involvement in the work; and, if it is inherently dangerous and likely to cause harm, the owner undertaking the work should be responsible for the harm. The employee, on the other hand, is covered by worker's compensation even if the contractor is insolvent. The owner should not have to pay for injuries caused by the contractor when the worker's compensation system already covers those injuries. * * *

" 'Finally, if the owner maintains control over the work and exercises that control negligently, he can be directly liable to the employee for his own negligence. Rather than imposing vicarious liability in these cases, it is better to hold the contractor and the owner directly responsible for their own fault. The contractor will pay via worker's compensation and the owner through the tort system. * * * ' " *Id.* at 1031.

The *Stockwell* court also expressly stated that an employee of an independent contractor is not " * * * the 'other' to whom a statutory or regulatory duty of care is said to be owed pursuant to § 424 of the Restatement, Second, Torts * * *." *Id.* at 1032.

In the case *sub judice*, appellant urges us to find that appellees owed appellant a statutory duty of care pursuant to R.C. 4101.11 and 4101.12, Ohio's frequenter statutes. As previously noted, the frequenter statutes are merely a codification of Ohio's common-law. These sections apply to employers and employees, not to owners who employ independent contractors under the circumstances of this case. Specifically, Lathrop not only controlled the details regarding scaffold construction but exercised its authority by dictating safety procedures in regard to the project.

Appellant's reliance on R.C. 3791.06 is also misplaced. This section provides, in relevant part:

"No person shall employ or direct another to do or perform labor in erecting, repairing, altering, or painting a house, building, or other structure, and knowingly or negligently furnish, erect, or cause to be furnished for erection for and in the performance of said labor, unsuitable or improper scaffolding, hoists, stays, ladders, or other mechanical contrivances which will not give proper protection to the life and limb of a person so employed or engaged.

394

"Whoever violates this section shall be fined not more than five hundred dollars or imprisoned not more than three months, or both." R.C. 3791.06.

The evidence in this case does not support a claim that appellees *directed* Lathrop to construct its scaffold in an unsuitable or improper manner. The scaffold from which Curless fell was used without incident for approximately six weeks before Curless's death. Further, a violation of R.C. 3791.06 merely triggers the penalty to be imposed when an improper scaffold is used; there is no indication that this section was intended to serve as the basis for a negligence claim.

In addition to the analysis set forth above, the drafters of Chapter 15 (the chapter dealing with liability of employers for the conduct of independent contractors) of the Restatement of the Law 2d, Torts, apparently would have reached a similar result under these circumstances. As set forth in *King v. Shelby Rural Elec. Coop. Corp.* (Ky.1973), 502 S.W.2d 659, 662, Tentative Draft No. 7 of Chapter 15 contains a note which states that when the sections in Chapter 15 " 'speak of liability to "another" or "others," or to "third persons," it is to be understood that the employees of the contractor, as well as those of the defendant himself, are not included.' "

The *King* court noted that although this language was not contained in the Restatement as adopted, it evidences an intent by the authors to limit the parameters of the exception. The absence of such limitation may have been an attempt by the drafters to allow each state to apply the provisions in accordance with its own case law and workers' compensation statutes.

In view of the aforestated reasons, we find that Sections 416 and 424 of the Restatement of the Law 2d, Torts, are inapplicable to the case *sub judice.* Accordingly, we find appellant's fifth and sixth assignments of error not well taken.

On consideration whereof, the court finds substantial justice has been done the party complaining, and judgment of the Ottawa County Court of Common Pleas is affirmed. It is ordered that appellant pay the court costs of this appeal.

*Judgment affirmed.*

HANDWORK, P.J., and ABOOD, J., concur.